Our next case today number 221933 Giovanni Rizarry Sierra v. Leland Dudek. Counsel, please introduce yourself on the record to begin. My name is Bamily Lopez-Ortiz and as a matter of personal privilege let me first give you all my condolences for the passing of Judge Celia. He will certainly be missed by all. I can take judicial knowledge that you argued before him several times. Yes, he did. So Judge, I represent in this case the appellant which is Giovanni Rizarry Sierra. In this case Giovanni, I file on behalf of Giovanni, oh I'm sorry I want to reserve three minutes for rebuttal. Giovanni filed a complaint alleging that his termination from federal employment was discriminatory and retaliatory. He said, our complaint said, he was removed, a formal administrative complaint was filed with the agency. The agency's EEO office is OCREO. OCREO prepared a report of investigation. Then OCREO issued a final agency decision and this complaint has been filed within the statute of limitations of that final agency decision which was 30 days. So the agency filed a motion to dismiss saying, no, no, no, the facts are not those. There's a different set of facts and this different set of facts starts with something the agency did after we filed the complaint and after the agency was served process, which was that the agency rescinded the fact, the final agency decision. Did it not occur because it was an error? Do you agree that final decision should have never been issued? No, no. I completely disagree. The final agency decision had to be issued because the agency had not issued a fact. What the agency issued before, and mind you, my first argument in my first error argument is the process itself of bringing extraneous documents and facts to the consideration of the court in a motion to dismiss, that they brought all these documents, et cetera. But going, assuming that those facts would be taken into consideration, no, the agency had to issue a fact because what the agency had originally issued was not a fact. It was a final decision regarding another claim of Giovanni Erizagri. And actually, that decision, what the agency had implied in that decision was that they were going to issue a fact later and notice with appeal rights to the MSPB. But counsel, didn't the, and I'm really not sure I have any of this right, because the procedural complexity here is almost beyond comprehension, I have to acknowledge. But my impression is that the agency did not, took so long to issue a, I don't know, a final decision that that authorized your client to then seek redress before the Merit Selection Board. He did that, was entitled to do that, and that gave the board subject matter jurisdiction. He got a decision from the board, and he was told that if he wants to challenge that, he has to do it within a certain amount of time. He didn't do that, and by the time the agency issued that final decision, which they shouldn't have because he had chosen this different route, he went before the merits, he went before the board because he had done that, they lost jurisdiction. They should not have issued that decision. That's why it was erroneous. But that didn't affect your client because he was already too late in challenging the decision of the board. So I don't, I don't see why any of, respectfully, what you're talking about matters at all. It does matter because the MSPB did not have jurisdiction, first of all.  Because the MSPB has jurisdiction if it's a removal. Okay, that's jurisdiction. But if Giovanni could go to the MSPB if he wished to forego the EEO process, or if the agency had issued a final agency decision. When Giovanni went to the MSPB, which, mind you, it was only two weeks after the EEOC administrative judge ordered the agency to issue the fact. So, I mean, there was a process in the EEOC. The administrative judge said, listen, regarding your first claim, I am going to issue your second claim, which is the termination one. I remanded to the agency for the agency to issue a FAD. Two weeks later, the agency issues a final decision that purposely misled Giovanni because it said we're adopting the agency's decision in its totality. So the inference would have been that the agency was going to issue a FAD as the EEOC had ordered the agency to do. So Giovanni took that and said, listen, MSPB, I'm here because the agency gave me this document that says it's a final agency decision. But it cannot be because this final agency decision is procedurally deficient because it does not include the notice requirements. And that's what Giovanni told the MSPB. Eventually, the agency argues with the MSPB that the MSPB had jurisdiction because when Giovanni went there and said, listen, this final agency decision is procedurally deficient, he had the intention of foregoing the EEO process. But that was not Giovanni's intention. But isn't that the law? The case law talks about the fork in the road. You either choose to go the agency route, pursue your EEOC remedies, or you go before the board. He made a choice. And having made that choice, he can't go back and pursue the agency route. I mean, that's a — how was — you're suggesting somehow he was misled into making that decision? How was he misled? Yes. Because he was led to believe that that was the final agency decision. And even then, later, the agency issued a final agency decision. Between that time that Giovanni filed that and the issuance of the final agency decision, the agency did not say, oh, by the way, we are going to dismiss because you filed an MSPB appeal. But, counsel, wasn't that because your client didn't file the notice that he was required to file? I thought that was sort of the heart of the issue here. The agency appeared with the MSPB and defended itself and presented a document specifying that no final agency decision had been issued. But isn't your client, when he goes to the board, isn't he required — and this is what my question was — to notify the EEO that he's gone ahead and proceeded with the board? Isn't that a clear requirement that he needs to give notice to the agency and he didn't do that? I could not tell you if he did or he did not. But — because I don't know, Your Honor. I would have to go back and check those documents, which it's the MSPB case and it's an entirely separate record of this case. But going back there, if he did not give notice, it confirms that it was not Giovanni's intention to — to forego that process with the agency, that he went there because he believed the FAD was procedurally defective. But putting — I understand you're saying that you're not sure what the underlying facts are, but just asking you about the legal requirement, isn't the legal requirement that if you go to the board, you have to — the individual has to notify the agency that they have done that? I believe they do. But if they notify the agency or OCREO, which is the Civil Rights EEO office — because what the agency here claims is that the agency knew of the appeal because the agency did appear in the appeal in the MSPB, but that OCREO did not. And that's why OCREO did not act beforehand. That's — that's the claim by the  agency. So yes, there is a notice requirement. What I do not know is to which part of the agency would that notice be required to be sent to. But if he — just for the moment, if they were correct that he hadn't provided the notice, in your view, does that change the claim here? And if not, why? No. In my view, it confirms that Giovanni's intention was not to forego the EEO process, was to question that the FAD that he was being issued was insufficient. Now, the agency is using this as a shield and as a sword. Listen, I gave you this. This is not the FAD. I gave you the FAD later, but that was a mistake. I'm going to go back here so I can count your statute of limitations, starting from the moment that the MSPB issued a decision, which we say was issued without jurisdiction. That's why. Counsel, if it's a legal requirement to notify the agency or part of the agency and your client didn't do that, why is that showing that he didn't intend to invoke the proceedings before the board? I mean, it's just showing he hasn't complied with the legal requirement. Why should we impute to that his intent not to? I do not understand because, obviously, I cannot tell you for certain if he notified or not. But I would assume he did because the agency appeared as part of the MSPB appeal. Now, I'm telling you if, this is an argument because I do not know, if Giovanni did not notify the MSPB, excuse me, the agency of his filing on MSPB, I find that to be coherent with his allegation that he was there because he believed the FAD was defective. Not that he wanted to appeal, but that it was a defective file. Why does his intent or his voice, why does any of that matter? It's what, it's the legal implications of decisions that he's made. That's a matter of law. His intent, strikes me, frankly, is irrelevant. Because, as you well stated, the case law in this case states that the intention of the appellant has to be clear of leaving the EEO process and going into the MSPB. And the appellant was led to believe that that was a defective, a procedural defective final agency decision. And more importantly, Your Honor, the thing is that we contest the authority the district court had to make these credibility determinations and determine and assess the intent of the parties in a motion to complain. Not even a motion for the right judgment. This is a motion to dismiss. Did the court have the authority to assess the credibility of Giovanni, to determine the credibility of the agency when the agency rescinded the FAD, to determine the intent, as Judge Lipet said, the fork on the road, of that he wanted to leave the EEO process? That is our first argument. But, counsel, we would, I didn't read those cases as requiring a showing of intent or an analysis of intent. I read those cases as just saying you need to show that the person went ahead with one process versus the other. So for us to agree with you that the district court could make these decisions on a motion to dismiss, we have to first find that actually it is a question of intent, right? What's your best case do you think that shows? That was cited in the brief, which specifically says that when you determine which is the process the employee wants to take, the first action that employee takes will govern, because that governs your intent. In this case, it's indisputable that Giovanni's first action was to pursue the EEO process. And pursue it, and he went to the EEOC, and the AJ, the administrative judge, remanded to the agency for the agency to issue a report of investigation was issued. Now, when is it that Giovanni said that he wanted to forego that EEO process and go into the MSPB? The agency says it is when he filed the MSPB. First of all, between the notice of the EEOC AJ, and the filing was only two weeks, so it's not 120 days, it's two weeks, from the order by the administrative judge of the EEOC, the faulty final decision, and the filing with the MSPB. Two weeks, so it's not 120 days, okay? Giovanni had been pursuing his case diligently with the EEOC and the EEO process. So why does the court need to determine if his filing was in error, an error induced by the agency's misrepresentation? That's a decision of intent, and that's a credibility decision that the court could not make at the dismissal, at motion to dismiss level. Probably not even at a motion for summary judgment, because credibility cannot be determined in summary judgment. But the intent of Giovanni needs to be determined in order to say, no, the starting point is the MSPB decision, and not the fact that was issued later. Okay, thank you, counsel. You have rebuttal, so let's hear from the administration now. Good morning. May it please the court, Jennifer Velez Perez for the Commissioner of Social Security Administration. We ask this court to affirm the district court's decision to dismiss Giovanni's case untimely. And maybe it's helpful to go over the procedural history, as Judge Lopez said, it's fairly confusing. So Mr. Giovanni started out the process, Mr. Risati started out the process with an EEO complaint, and at that point, yes, he is choosing the EEO process. And we have a letter of acceptance from the agency bifurcating his claims, which is important, because part of them get dismissed and part of them do not, and this is in his complaint. So this is a fact that we know from his complaint to the district court. At that point, it assigns two different case numbers. One has the number 663, and the other one has the number 1065. 1065 deals with the mixed-case complaint, which is his termination claim, basically that he was terminated for a discriminatory purpose. On the other side, you have the 663, which deals exclusively with pre-termination claims. And so the letter of acceptance explains that there's two processes for these two different types of claims. The mixed-case complaint, he has the choice of either waiting for a FAD, a final agency decision, or he may also appeal to the MSPB, because the MSPB would have jurisdiction over a mixed case. On the other side, there's the 663, where, after the report of investigation, he could either choose to ask for a hearing before the EEOC or wait for a final agency decision. After the report of investigation was issued by the EEO office, Mr. Isari requested on both of the cases a hearing before the EEOC. He was not entitled to a hearing before the EEOC of his 1065 case, which was on this side. So what the EEOC administrative judge does is he says, we find that your pre-termination claim, your 663, sorry, it was, you, we don't have jurisdiction over it. You went through it in the grievance process. And so they ordered the EEO office to, within 40 days, respond whether or not they would implement that decision in full. And then it says, we do not have jurisdiction over your 1065, because the 1065 cannot come before the EEOC under regulation. From then on, the agency in compliance with that order issues a final order, and the final order, which is the document that he says misled him, at the, in its title says, it's not only with respect to 663, which is not the termination claim. And so even if he was misled at that, even if he was confused, it was plainly stated on the document that it was related to his other claim. After that point, he files his appeal with the MSPB, and the first thing that the agency does at that point is to point out to him that he was appealing a non-board appealable EEOC complaint. Basically, the final order that he attached to his MSPB appeal dealt with the 663 and not the 1065. But it also alerted him to the fact that because it had been 120 days since he had filed his EEO complaint, he could bring it in the MSPB. And so that's why we vehemently disagree with the fact that the agency misled him, because it is very clear, both on the face of the final order, which he appealed to the MSPB, and then before the MSPB, the agency's, you know, the agency's narrative is very clear. It mentions it, I think, three or four times. It dissuades him of his mistake and belief. And this is a document that is before the district court, because it was the plaintiff himself that attached it to his SIR reply. Yes, Your Honor. And this court has said before that correspondence between a lawyer and the EEOC, this court can look at it at the 12B6 stage, and also that it can take judicial notice of such things as, like, the date of the filing, what was the date of the filing, et cetera. In your view, is intent of the individual relevant to the legal questions that we have to decide? No. And we believe that he cites no authority for that. On the opposite, it seems like the regulations are pretty automatic. Once you file in one form, you're supposed to continue through it. At the point where he switched over to the MSPB, again, at that point, the agency was aware of everything, that the FAD was a nullity, and that he couldn't have been misled by it, because it was issued after he had abandoned his claim. He had noticed from the MSPB initial decision when it would become final, and that he had 30 days from that date to appeal it. Counsel, these pre-termination claims, retaliation, pre-termination discrimination, they're out of the kit. We're not dealing with that at all. This is all about termination, right? It's all about termination, and that's in, I believe that's in the appellant's brief. I can look for the site. You describe these sort of bifurcated tracks before the EEOC. So did he get decisions on both tracks, in one case, rejecting all of his claims, but the pre-termination claims, those were not appealable to the board? Is that correct? They're not appealable to the board. But the decision on termination, that was appealable to the board. Is that what you're saying? That's correct. And he took that appeal. Is that correct? He did. He was the one that mistook the final order for a fad on the merits, and he went to the MSPB. And despite the agency letting him know, the final order did not deal with your termination claim. It was not... But that appeal was actually, in one view, premature, because it was not a final decision on the termination claim. Is that correct? The regulations state that if within 120 days of a formal EEOC complaint, the agency hasn't reached a decision, that he doesn't have to wait anymore. He can take it to the MSPB. And that's what he did. Yes, that's correct. He was able to do that, and there's a lot of cases before the MSPB, where the MSPB refuses to take jurisdiction before the 120 days, and then it accepts it if they file it after the 120 days have elapsed. What's the difference between an order and a decision, a final order and a final decision? What's the difference between the two? Well, the final order basically was just implementing what the EEOC AG had determined, and it only did so with regards to what he had jurisdiction, which was the pre-termination claims. The final agency decision is issued after there is a full investigation by the agency, and it was extensive pages, which is the document that he appealed, going over the merits of the case. And then one point I wanted to make, Judge Rickleman noted that he had an obligation to give notice to the agency when he filed the MSPB appeal, and that is also told to him from the very beginning, from the letter of acceptance. But there's one thing that I wanted to point out, and it's in the brief in the final pages, that just because one part of the agency has noticed doesn't mean that it is talking to Ocreo and letting Ocreo know everything that the defensive portion does, and that is by design to preserve a fair process, because there's a management directive from the EEOC stating that heads of agencies should keep a firewall between the EEOC investigative office and the defensive side. So basically whoever was responding to the MSPB, they're basically prohibited from speaking, and that is to keep the process fair. If the court has no further questions, we rest on our brief. Ms. Lopez, you have three minutes to rebuttal. Vamily Lopez-Ortiz, the agency claims that the final order issued by Ocreo, which I am going to use the one in appendix page 83, I'm looking at it, reference only case 663, which is the pre-termination, okay? But let's look at what the EEOC administrative judge ordered the agency to do. The order by the administrative judge had two parts. One was regarding the 63 case, I have no jurisdiction, so we're going to dismiss it, and regarding the termination claim, you have to issue a final agency decision, because you already did the report of investigation, you have to issue a final agency decision and notify it, because Giovanni would have a right to appeal that to the MSPB. So when the agency issued the final order, that it's true, it only references case number 63, it says simply that it adopts the EEOC agency decision without modification. So if I'm going to take that, that would mean that they would have to issue a final agency decision. So when Giovanni went to the MSPB, he was not saying, I want to appeal the decision, because there was no decision. What Giovanni was saying is the agency was ordered to issue a FAD, and what they issued was procedurally insufficient. How do you respond to this 120-day issue, which apparently in the absence of a final decision within the requirement timeframe, gave him a right to go to the board, and that's what the administration, how do you respond to that? Well, he never claimed that. He never asked for that. The form to file an appeal with the MSPB has a specific space there that says, what is your jurisdictional allegation? And Giovanni said, my jurisdictional allegation is because I was given this order, which does not comply with the requirements of a final agency decision. Obviously, that it is because more than 120 days have passed, but Giovanni did not say that. He specifically said, I'm questioning the procedural sufficiency of the final agency decision. It was the agency at the MSPB arguing later that they simply said, oh, by the way, you have jurisdiction because more than 120 days have passed. They never addressed the fact that they had led Giovanni to believe that that notification, adopting the EEOC agency decision in its entirety, was the final agency decision. They never clarified that. They let that error to continue, and then when it was convenient for the agency, they say, oh, 120 days have passed. But what they did after that contradicts that position, because the agency issued a FAD. And now they claim that the right hand of the agency does not, cannot know what the left hand of the agency does. Well, it's one agency. So that same agency issued a FAD.